J-A14030-26          2026 PA Super 151

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :
                   v.                       :
                                          :
                                          :
LOUIS SMITH                        :
                                          :
            Appellant           :  No. 3347 EDA 2024

Appeal from the Judgment of Sentence Entered November 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006865-2023

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

OPINION BY MURRAY, J.:                            **FILED JULY 15, 2026**

Louis Smith (Appellant) appeals from the judgment of sentence imposed following his nonjury convictions of one count each of persons not to possess firearms, possession of a firearm with altered manufacturer's number, and possession of a controlled substance (PCS).[1] Appellant raises a sole challenge to the trial court's denial of his motion to suppress physical evidence. After careful review, we affirm.

On June 30, 2023, Philadelphia law enforcement recovered from Appellant a firearm and illegal controlled substances. The Commonwealth subsequently charged Appellant with possession of a controlled substance with intent to deliver (PWID), conspiracy to commit PWID, carrying a firearm

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6110.2(a); 35 P.S. § 780-113(a)(16).

without a license, carrying a firearm on public streets in Philadelphia, possessing an instrument of crime (PIC),[2] and the above-described offenses. Following a preliminary hearing, a municipal court judge dismissed the charges of PIC, PCS, conspiracy, and PWID, and held the remaining charges for court. The Commonwealth refiled the criminal complaint relative to the dismissed charges and, following a hearing, a common pleas court judge held all charges for court.

On March 7, 2024, Appellant filed a boilerplate omnibus pretrial motion (OPTM) seeking suppression of "physical evidence" and "anything said by [Appellant.]" OPTM, 3/7/24, at 1. Following procedure not relevant to this appeal, the matter proceeded to a suppression hearing on September 4, 2024. *See* N.T., 9/4/24, at 6-7 (Appellant's counsel stating the grounds for suppression were that police (1) "lacked reasonable suspicion or probable cause to stop, seize, arrest, frisk[,] or search [Appellant,]" and (2) questioned Appellant without first providing *Miranda*[3] warnings).

The trial court summarized the pertinent facts adduced at the suppression hearing:

_____

[2] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903(c), 6106(a)(1), 6108, 907(a).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Special Agent Mike Guillaume [(Officer Guillaume)[4]] testified that on June 30, 2023, he was on duty as a Philadelphia Police Officer with the Narcotics Enforcement Team and participated in an investigation at the 1500 block of Market Street in Philadelphia. N.T., 9/4/24, at 8, 27.  At that point, [Officer] Guillame had been with the Philadelphia Police for almost [five] years.  *Id.* at 20.  During his time with the … Narcotics Enforcement Team, [Officer] Guillaume's unit averaged [75] cases a year.  *Id.* at 21.  [Officer] Guillaume arrived in the area of 1500 Market Street around 11[:00 a.m.] on June 30, 2023.  *Id.* at 28.  [Officer] Guillaume was not familiar with the area, as he was normally assigned to the 22nd district.  *Id.* at 27-28.[5]  Around 1[:00 p.m.], a confidential informant ("CI") was provided [with] pre-recorded "buy" money and instructed to purchase narcotics.  *Id.* at 10-11, 32-33.  [Officer] Guillaume observed the CI approach Appellant, who was with a male (later identified as [Rahmaire] Hayes [(Mr. Hayes)]) and another male who was never identified[ (unknown male)].  *Id.* at 11-12.  Appellant directed the CI to Mr. Hayes by "kind of point[ing] his finger."  *Id.* at 13.  The CI spoke to Mr. Hayes while Appellant spoke to a male later identified as [Risheem] Campbell[ (Mr. Campbell)].  Appellant and Mr. Campbell then returned to the CI and Mr. Hayes.  *Id.* at 12.  The CI handed the pre-recorded "buy" money to the unknown male, and Mr. Hayes handed the CI a clear jar.  Appellant was standing less than [five] feet from Mr. Hayes at that time.  *Id.* at 14-15.  There was an exchange between Mr. Campbell and the unknown male, which [Officer] Guillaume believed was U.S. currency.  The CI then reported back to officers at a predetermined location.  *Id.* at 12.  [Officer] Guillaume observed these interactions from a distance.  He was able to see the men involved, but could not hear their conversations.  *Id.* at 31.  Officers searched the CI and recovered one clear jar containing what appeared to be marijuana and $13 in U.S. currency.  *Id.* at 12.

---

[4] Officer Guillaume testified that, on the date of the suppression hearing, he was employed by the Pennsylvania Office of the Attorney General.  N.T., 9/4/24, at 20.  As Officer Guillaume acted in his capacity as a Philadelphia Police officer at all times relevant to this appeal, we refer to him as such throughout.

[5] At the suppression hearing, Officer Guillaume agreed that 1500 Market Street is not a "high crime area."  N.T., 9/4/24, at 21.

Trial Court Opinion, 5/22/25, at 1-2 (citations and punctuation modified; footnotes added).

The trial court summarized Officer Guillaume's testimony concerning what next transpired:

> [Officer] Guillaume, along with [five] other officers, approached Appellant's group and stopped Appellant, Mr. Hayes, and Mr. Campbell. N.T., 9/4/24, at 12-13, 16. [Officer] Guillaume approached Appellant and placed his hands on [Appellant] to stop him, at which point Appellant briefly struggled, "[k]ind of like a 'get off me' kind of thing." *Id.* at 16, 36. Appellant quickly became compliant with [Officer] Guillaume. [Officer] Guillaume placed Appellant in handcuffs, frisked him, … removed the handcuffs to take off Appellant's backpack[, and then re-handcuffed Appellant]. *Id.* at 16-17, 37. [Officer] Guillaume informed Appellant that he was going to search his backpack and asked if there was anything in his bag that might hurt [law enforcement]. Appellant informed [Officer Guillaume] that there was a firearm in his bag. [Officer] Guillaume opened the bag and recovered a loaded .38 revolver with an obliterated serial number. *Id.* at 17, 37. Also recovered from Appellant's bag were multiple flip-top containers of an off-white, chalky substance suspected to be crack cocaine, and a Ziplock bag containing what appeared to be marijuana. *Id.* at 17. After searching the backpack, [Officer] Guillaume placed Appellant, who was still in handcuffs, in the back of a patrol car. *Id.* at 38. Drugs and U.S. currency were also recovered from Mr. Hayes and Mr. Campbell. *Id.* at 24 ([Mr.] Hayes), 24-25 ([Mr.] Campbell). [Officer] Guillaume testified that, based on his experience and his observations, he believed that Appellant and the other men were working together to sell drugs. *Id.* at 23. [Officer Guillaume] did not observe any exchanges between Appellant and the other men, any drugs or paraphernalia with them, or Appellant reaching into his backpack prior to the CI's approach. *Id.* at 32.

Trial Court Opinion, 5/22/25, at 2-3 (citations and punctuation modified).

At the conclusion of the suppression hearing, the trial court denied Appellant's motion to suppress the physical evidence, but granted his motion

to suppress his statement to police regarding the firearm. N.T., 9/4/24, at 59-60. The matter immediately proceeded to a bench trial, after which the trial court convicted Appellant of the above-referenced charges. *Id.* at 74.[6] The trial court deferred sentencing for the preparation of a presentence investigation report and a mental health evaluation.

On November 21, 2024, the trial court sentenced Appellant to an aggregate 2½ to 5 years in prison. Appellant did not file post-sentence motions. Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue: "Did police have probable cause to arrest [Appellant] for drug offenses[,] and to subsequently conduct a warrantless search of the backpack he was wearing?" Appellant's Brief at 2.

In his sole issue, Appellant argues that his arrest was unsupported by probable cause, and therefore the evidence recovered from his backpack, during a search incident to arrest,[7] should have been suppressed. *Id.* at 17, 24.

_____

[6] Before trial commenced, the Commonwealth *nolle prossed* Appellant's charges of carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and PIC. N.T., 9/4/24, at 62; Trial Disposition Form, 9/4/24, at 2. The trial court acquitted Appellant of PWID and conspiracy to commit PWID.

[7] In a footnote in his appellate brief, Appellant additionally argues that Officer Guillaume's search of Appellant's backpack "appears to have exceeded the scope of a lawful search incident to arrest. Thus, even if there were probable
*(Footnote Continued Next Page)*

Our Supreme Court recently reiterated our standard of review:

We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the factual findings are supported by the record, we are bound by them. We assess the record in the light most favorable to the prevailing party, which in this case was the Commonwealth. As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Foster***, ___ A.3d ___, 2026 WL 1383187, at *4 (Pa. filed May 19, 2026) (citations and quotation marks omitted).

Here, Appellant concedes that law enforcement "had probable cause to believe that a drug transaction occurred, and that they could lawfully arrest

---

cause to arrest [Appellant] and the underlying arrest were lawful, the search of the backpack arguably was not." Appellant's Brief at 25 n.5. As Appellant did not raise this legal theory before the trial court, it is waived. ***See Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression." (citations omitted).

Even if Appellant had preserved this issue, it would merit no relief. ***See, e.g.***, ***Commonwealth v. Williams***, 305 A.3d 89, 97 (Pa. Super. 2023) ("The parameters of a search incident to arrest includes **containers** and clothing that are in the arrestee's possession at the time of his arrest." (citation omitted; emphasis in original)); ***Commonwealth v. Guzman***, 612 A.2d 524, 526-27 (Pa. Super. 1992) (finding that police lawfully searched satchel carried by arrestee at time of arrest), ***abrogated on other grounds by Commonwealth v. Bell***, 645 A.2d 211 (Pa. 1994); ***Commonwealth v. Trenge***, 451 A.2d 701, 710 (Pa. Super. 1982) (holding police lawfully searched shoulder bag that was on arrestee's person when he was arrested).

the men involved in the transaction." Appellant's Brief at 18. Appellant argues, however, that he

> did not participate in the suspected drug transaction—he did not hand anything to anyone or receive anything from anyone[;] he did not engage in "lookout behavior[;]" nor was he overheard saying anything drug-related. …. [Appellant's] behavior— casually directing someone seeking drugs to a seller and being nearby during the ensuing sale, but not appearing to participate in or profit from it—has previously been held insufficient to convict someone of being an accessory before the fact to a sale of drugs. **See Commonwealth v. Flowers**, 387 A.2d 1268, 1271 (Pa. 1978) (finding [evidence was insufficient to establish] that defendant who directed an undercover officer to drug seller was an accessory to the sale of drugs … where defendant "did not handle either cash or marijuana, did not enter negotiations or delivery, and was present only passively during the ride to the dealer's residence and the transaction thereafter.")[.[8]]

Appellant's Brief at 18-19 (record citations omitted; footnote added). Appellant acknowledges that **Flowers** addressed a sufficiency claim, but maintains that "there is no precedent suggesting" that Appellant's conduct in the instant case, "standing alone, meets the probable cause standard." **Id.** at 19.

Appellant further argues that Officer Guillaume's experience is not a relevant factor in the probable-cause analysis, because he failed "to establish

---

[8] Our Supreme Court subsequently explained that while the **Flowers** Court opined that the defendant "could only be liable as an accessory … if the evidence showed that he was an active participant in the intent to make the sale, our statement was unnecessarily too restrictive." **Commonwealth v. Murphy**, 844 A.2d 1228, 1236 n.13 (Pa. 2004) (quotation marks, citation, and brackets omitted). According to the **Murphy** Court, "the prosecution must only produce evidence establishing that the defendant wanted to actively aid in transferring drugs to another." **Id.** (citation omitted).

a nexus between his experience and the observations that he made of [Appellant] prior to arresting him." *Id.* at 21; *see also id.* at 20 (citing *Commonwealth v. Thompson*, 985 A.2d 928, 935 (Pa. 2009) (stating that "a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." (citation omitted)).

According to Appellant, "other facts in this case cut against a finding of probable cause," including that (1) the transaction occurred during midday in an area that was not known to be a high crime area; (2) officers were not conducting surveillance "in response to a citizen's complaint or informant's tip"; (3) Officer Guillaume observed only one drug transaction; and (4) Officer Guillaume testified that he believed Appellant was "working in concert" with Mr. Smith, Mr. Campbell, and the unknown male based on evidence recovered **after** Appellant's arrest. *Id.* at 22-23.

In response, the Commonwealth argues that "Officer Guillaume's experience as a narcotics officer[,] combined with the actions he witnessed[,] led him to reasonably believe that [Appellant] was working with the three men who physically touched the narcotics and cash under [Appellant's]

supervision." Commonwealth Brief at 7-8.[9] The Commonwealth points out that Officer Guillaume

> arranged for the CI to approach [Appellant] *for the purpose of purchasing narcotics*. When the CI did so, [Appellant] was standing within five feet of [Mr.] Hayes and the [unknown male,] and within ten feet of [Mr.] Campbell. In response, [Appellant] pointed the CI towards [Mr.] Hayes and the [unknown male]. [Appellant] then joined [Mr.] Campbell, and the two proceeded to walk over to the CI, [Mr.] Hayes, and the [unknown male]. While [Appellant] stood next to them, the CI handed the pre-recorded cash to the [unknown male,] who in turn exchanged cash with [Mr.] Campbell[,] while [Mr.] Hayes handed the CI a jar containing marijuana.

*Id.* at 9-10 (record citations omitted; emphasis in original).

The Commonwealth contends that these observations established probable cause, emphasizing that "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference." *Id.* at 10 (quoting **Commonwealth v. Lindblom**, 854 A.2d 604, 607 (Pa. Super. 2004)); *see also id.* at 10 (the Commonwealth arguing that the fact that Officer Guillaume "listed the evidence recovered … when explaining his belief that the men were working together" is irrelevant, because he only "did so after explaining the interactions he observed between the men.").

_____

[9] The Commonwealth opines that Officer Guillaume "clearly had reasonable suspicion to stop" Appellant; "[h]owever, as the probable cause standard was satisfied, it is unnecessary to determine the precise point at which the police detention became custodial, rather than investigative." Commonwealth Brief at 8 n.3.

Having summarized the parties' arguments, we turn to the governing law.

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures." **Commonwealth v. Adorno**, 291 A.3d 412, 415-16 (Pa. Super. 2023). "As a general rule, a warrant stating probable cause is required before a police officer may search for or seize evidence." **Commonwealth v. McMahon**, 280 A.3d 1069, 1072 (Pa. Super. 2022) (citation and quotation marks omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." **Id.** (citation omitted). One such exception is a search incident to arrest. **Id.**; **see also Williams**, 305 A.3d at 97 ("The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." (citation omitted)).

"[T]he validity of a warrantless arrest is determined by considering whether, at the moment the arrest was made, the officer had probable cause to make it, and the person arrested is believed to be the guilty party." **Commonwealth v. Floyd**, 313 A.3d 1061, 1065 (Pa. Super. 2024) (citations and quotation marks omitted). "When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be

- 10 -

suppressed." ***Commonwealth v. Easter***, 331 A.3d 675, 680 (Pa. Super. 2025) (citation omitted).

We have explained that

> "[t]o determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances." ***Commonwealth v. Clark***, 735 A.2d 1248, 1252 (Pa. 1999). Probable cause for a warrantless arrest exists when "the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." ***Floyd***, 313 A.3d at 1065 (citation omitted).

***Commonwealth v. Hoyle***, 337 A.3d 544, 563 (Pa. Super. 2025) (citations modified); ***see also Commonwealth v. Goldman***, 252 A.3d 668, 678 (Pa. Super. 2021) ("It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." (citation omitted); ***Commonwealth v. Freeman***, 128 A.3d 1231, 1242 (Pa. Super. 2015) ("[P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act." (citation and quotation marks omitted)).

"The totality of the circumstances test dictates that we consider all relevant facts, when deciding whether the warrantless arrest was justified by probable cause." ***Commonwealth v. Luv***, 735 A.2d 87, 90 (Pa. 1999) (citation omitted). Moreover, "active engagement in a crime [is] not a prerequisite for a warrantless arrest so long as the police ha[ve] probable cause for a completed felony that [the defendant] committed." ***Hoyle***, 337 A.3d at 563 (citing ***Commonwealth v. Evans***, 685 A.2d 535, 537 (Pa.

1996)); *see also Murphy*, 844 A.2d at 1234 ("It is well-established [] that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." (citations omitted)).

Instantly, the trial court concluded that Appellant's arrest was supported by probable cause:

> [Officer] Guillaume had probable cause to arrest Appellant and carry out a search incident to arrest. He observed Appellant standing near Mr. Hayes and the [unknown] male. N.T., 9/14/24, at 11-12. Appellant directed the CI to Mr. Hayes. *Id.* at 13. Appellant spoke with Mr. Campbell and then returned to the CI and Mr. Hayes, at which point the CI handed pre-recorded "buy" money to the unknown male. Mr. Hayes handed the CI a clear jar, and then a hand-to-hand exchange occurred between Mr. Campbell and the unknown male. Appellant was standing less than [five] feet from Mr. Hayes when the jar was exchanged. *Id.* at 12, 14-15. Officers then recovered what appeared to be marijuana from the CI. *Id.* at 12. It was therefore reasonable for Agent Guillaume[ to believe], based on [(1)] his experience with the Narcotics Enforcement Team, [(2)] Appellant's actions, [(3)] the actions of others, and [(4)] the items recovered from the CI, … that Appellant was engaged in selling drugs in concert with Mr. Hayes, Mr. Campbell, and the unknown male.

Trial Court Opinion, 5/22/25, at 5 (punctuation and citations modified).

The trial court's factual findings are supported by the record, and we agree with its legal conclusion.[10] *See Foster*, 2026 WL 1383187, at *4.

---

[10] While we agree with the trial court's ultimate conclusion, *i.e.*, that Appellant's arrest was supported by probable cause, we note that the evidence recovered **after** Appellant's arrest is not an appropriate factor in the probable-cause analysis. *See Commonwealth v. Chase*, 575 A.2d 574, 575 (Pa. Super. 1990) ("The established test for determining whether an officer had

*(Footnote Continued Next Page)*

Appellant accurately describes several circumstances (not present here), which would have provided further support for the trial court's decision. **See** Appellant's Brief at 22-23. Nevertheless, we agree with the trial court that the *totality of the circumstances* in the instant case satisfies the probable cause standard. **See Luv**, 735 A.2d at 90.

We have observed that "the question of whether probable cause exists in a given circumstance is so fact-sensitive that it is difficult to extrapolate from other cases." **Commonwealth v. Holton**, 906 A.2d 1246, 1249 (Pa. Super. 2006). Here, however, the trial court's legal conclusion finds support in the factually similar case of **Commonwealth v. Leatherbury**, 409 A.2d 78 (Pa. Super. 1979).

In **Leatherbury**, two undercover police officers approached the appellant (who was unknown to them), and "asked if he knew where [they] could get … half a bundle of heroin." **Id.** at 79. The appellant responded that he would "check it out," and walked to a nearby residence, where he spoke with another individual, the appellant's brother, Irvin Leatherbury (Irvin). **Id.** One of the officers walked over to the appellant and Irvin, whereupon the appellant told the officer, "This is the man, talk to him." **Id.** The officer arranged to purchase heroin from Irvin; "[h]owever, [the] appellant did not

___

sufficient probable cause to legally justify a warrantless arrest involves looking at the facts and circumstances confronting the officer **at the time of the arrest**." (citation omitted; emphasis added)).

- 13 -

take part in the conversation, nor could [the officer] testify that [the] appellant even heard [the conversation]." *Id.* The officer and Irvin went to another residence, unaccompanied by the appellant. *Id.* Irvin entered the residence, then "emerged with the heroin, and the purchase was completed outside." *Id.* The officers departed, later returned with backup, and arrested the appellant and Irvin. *Id.* Following his convictions of PWID and conspiracy, the appellant challenged his warrantless arrest on appeal. *Id.*

The *Leatherbury* Court rejected the appellant's argument that his arrest was unsupported by probable cause, emphasizing that the test for probable cause "is not as demanding as the test for sufficiency, which is whether the evidence is strong enough to support a finding of guilt beyond a reasonable doubt." *Id.* at 80. The *Leatherbury* Court concluded that the officer

> had probable cause to arrest [the] appellant in that [the officer] knew enough to warrant a prudent person in believing that [the] appellant intended to help Irvin [] make a sale of heroin. [The officer] knew[] that [the] appellant knew he wanted to buy heroin; that [the] appellant introduced him to Irvin [] as someone who could sell him heroin; and that shortly after the sale, [the] appellant was at the scene of the sale. On the basis of this knowledge[,] it was reasonable for [the officer] to infer that [the] appellant had probably helped, [*i.e.*], acted as an accessory to, Irvin [] with respect to the sale. The arrest of [the] appellant was therefore lawful[.]

*Id.*

Instantly, law enforcement engaged the CI to purchase illegal drugs. Officer Guillaume observed the CI approach Appellant, who directed the CI to

- 14 -

Mr. Hayes and the unknown male. N.T., 9/4/24, at 13. As the CI spoke with Mr. Hayes, Appellant spoke with Mr. Campbell, approximately 11 feet away. *Id.* at 12. Appellant and Mr. Campbell then approached the CI, Mr. Hayes, and the unknown male, at which point Officer Guillaume observed a hand-to-hand transaction between the CI and the unknown male. *Id.* The CI then returned to officers and presented the illegal drugs he or she had just obtained via the transaction. *Id.*

Though Appellant insists Officer Guillaume failed to establish a nexus between his experience and the facts of this case, we note that Officer Guillaume testified that, *in his experience*, he had observed approximately 150 hand-to-hand drug transactions, *see id.* at 21, which is precisely what occurred in the instant case. Regardless, the CI presented to law enforcement the actual drugs he or she had just purchased, thereby conclusively confirming Officer Guillaume's suspicion that a drug sale had just transpired. The only remaining question at that point was whether Officer Guillaume's observations of Appellant's conduct supplied probable cause that Appellant was complicit in the sale of illegal drugs.

Relying on **Leatherbury**, *supra*, we resolve that question in favor of the trial court's conclusion that probable cause existed to arrest Appellant. As in **Leatherbury**, Appellant directed a drug purchaser to a drug seller. Here, however, rather than disengaging, like the appellant in **Leatherbury**, Appellant remained at the scene of purchase, and was mere feet away

throughout the transaction. Considering the totality of the circumstances, the fact that an agent of law enforcement (*i.e.*, the CI), and not a police officer, engaged with Appellant is not fatal to the probable-cause analysis. Officer Guillaume knew, when the CI approached Appellant, that the CI's mission was to engage in a drug sale. Appellant's actions of directing the CI to the drug seller, and subsequently attending the scene of the drug sale, supplied law enforcement with probable cause to believe Appellant "intended to help" his compatriots complete a drug sale. ***Leatherbury***, 409 A.2d at 80; ***see also***

***Murphy***, 844 A.2d at 1237 (holding the evidence was sufficient to establish that the defendant "intended to aid in the transfer of drugs … based on the evidence that [the defendant] called out to [the drug seller] after the [drug buyer] approached [the defendant], confirmed to [the drug seller] that the [drug buyer] was not a police officer, stayed with the [drug buyer] while [the drug seller] got drugs, and requested compensation from the [drug buyer] for his efforts.").

Accordingly, Appellant's sole issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2026

- 16 -